UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO. 8:25-cr-424-MSS-LSG

ERHAN JOHN ER

**THE UNITED STATES'S SENTENCING MEMORANDUM**

Defendant Erhan John Er, an international truck driver, agreed to buy firearms for an illegal firearms dealer in Canada. Investigators later found ten of those firearms at Canadian crime scenes, including the scenes of two homicides, a firearms discharge, and a robbery. Each of the ten firearms had an obliterated serial number, but investigators restored the serial numbers and traced them back to the defendant's purchases in Florida. Considering the seriousness of the defendant's crime and the other statutory purposes of sentencing, the United States recommends that the Court sentence the defendant to a low-end, Guidelines sentence of 70 months in prison.

I.      **FACTUAL BACKGROUND**

There are no objections to the facts in the Presentence Investigation Report (the "Report"). In summary, the defendant is a United States citizen who moved to Canada as a child. Report ¶¶ 71, 72. In February 2022, the defendant moved to the United States, specifically to Sarasota. Report ¶ 36. The defendant at the time worked as a truck driver and held a valid Florida commercial driver's license. Report ¶¶ 83, 84.

In May 2022, the Canadian government announced that it would introduce a bill banning buying, selling, and transferring handguns in, and importing handguns to, Canada. The Prime Minister and Federal Ministers Announce Gun Control Measures, Prime Minister of Canada (May 30, 2022), https://www.pm.gc.ca/en/news/speeches/2022/05/30/prime-minister-and-federal-ministers-announce-gun-control-measures. By June 30, 2022, the defendant decided to supplement his income by buying handguns in Florida (where he could lawfully buy them as a U.S. citizen) and bringing them to Canada (where they were scarce and would imminently become scarcer, and thus more valuable). Doc. 30 (Plea Agreement), at 15. So, the defendant agreed with Person-1 to provide Person-1 in Canada with Florida-sourced firearms in exchange for a $1,000 (Canadian) per firearm transportation fee, plus the cost of buying each firearm. Doc. 30, at 14.

On June 30, 2022, the defendant picked out 12 handguns at two different gun stores in Sarasota, Florida. Doc. 30, at 15; Report ¶ 38. The defendant took possession of the guns on July 2, 2022, and, at that time, certified on official Bureau of Alcohol, Tobacco, and Firearms forms that he was the true buyer of the guns. Report ¶¶ 17, 44. On July 8, 2022, the defendant drove the guns into Canada in his truck. Report ¶ 18. Per their agreement, soon after crossing the border, this defendant gave the guns to Person-1 in exchange for his fees. Report ¶ 18. Less than twenty days after the defendant crossed the border, on June 27, 2022, the Thunder Bay, Ontario Police recovered one of the guns while executing a search warrant relating to cocaine and fentanyl sales. Report ¶ 23. Canadian law enforcement

recovered four other guns that the defendant bought on July 2, 2022, while investigating (1) a homicide in Quebec; (2) a robbery in York, Ontario; (3) a homicide in Hamilton, Ontario; and (4) the possession of an illegal gun in Durham, Ontario. Report ¶¶ 24-27. All the guns had obliterated serial numbers when investigators found them. Report ¶¶ 23-27.

In late July 2022, while back in the United States, the defendant again tried to buy guns per his agreement with Person-1. Report ¶¶ 19, 20, 21, 28. This time the defendant tried ordering online from gun stores in Southwest Florida. Report ¶¶ 20, 21, 28. Two different gun stores in Fort Myers and Naples, however, refused to fill his orders, which had totaled twenty guns. Report ¶¶ 20, 21. But one gun store, a different store in Naples, Florida, accepted the defendant's July 25, 2022 order for 16 pistols and filled it. Report ¶ 28. Investigators later recovered text messages from the defendant's phone, where he appeared to express frustration about his fee for smuggling the guns and whether it was worthwhile to smuggle to Person-1 the 16 pistols from the successful order or if he should wait to buy more. *See* Report 18. Meanwhile, on August 5, 2022, the Canadian government announced an interim ban on the importation of handguns. News Release, Canada Puts in Place Temporary Handgun Import Ban, Global Affairs Canada (Aug. 5, 2022), https://www.canada.c a/en/global-affairs/news/2022/08/canada-puts-in-place-temporary-handgun-import-ban.html.

On September 4, 2022, the defendant traveled to the Naples gun store that had accepted his order and took possession of the pistols. Report ¶ 28. That day, the

3

defendant also signed official ATF forms and represented on them that he was the true buyer of the pistols. Report ¶¶ 17, 44. On September 13, 2022, the defendant smuggled the pistols into Canada in his truck. Report ¶ 29. The defendant soon after gave the pistols to Person-1 in exchange for his fees. Report ¶ 29. Canadian law enforcement recovered five of these pistols while investigating a firearms discharge in Toronto, Ontario, and illegal gun possessions in Toronto and elsewhere in Ontario. Report ¶¶ 30-35. All those guns had obliterated serial numbers when investigators found them. Report ¶¶ 31-35.

The defendant moved back to Canada at the end of September 2022. Report ¶¶ 29, 36. Canadian investigators began restoring the serial numbers from the recovered guns, and, on September 10, 2024, ATF agents received trace reports showing that the defendant had bought them in Florida. Report ¶ 16. On October 16, 2024, ATF agents spoke with the defendant on the phone. Report ¶ 36. Among other things, the defendant said that he expected ATF agents to contact him about the number of guns that he bought. Report ¶ 36. The defendant also claimed that he bought many of the same kind because he wanted to paint them different colors and that he kept the guns in a storage unit in Sarasota. Report ¶ 36.

After further investigation, ATF agents obtained and, on December 19, 2024, executed a search warrant at the defendant's Sarasota storage unit. Report ¶¶ 36, 37. There they found, among other things, a handwritten gun ledger showing the defendant's payments for four of the guns that the defendant bought on July 2, 2022.

Report ¶ 38. The agents also found the receipt for the 16 pistols that the defendant successfully ordered from the Naples gun store. Report ¶ 38.

On December 26, 2024, Homeland Security Investigations agents interviewed the defendant as he entered the United States from Canada at the Lewiston Bridge, New York port of entry. Report ¶ 39. The defendant again claimed that he ceramically painted guns. Report ¶ 39. But this time, the defendant told the agents that he "melted" the guns down after his wife got mad about his gun hobby. Report ¶ 39. The defendant denied selling guns and taking them to Canada because, as he acknowledged, doing so is illegal. Report ¶ 39.

## II.    PROCEDURAL HISTORY

On August 7, 2025, United States Magistrate Judge Anthony E. Porcelli signed a criminal complaint against the defendant for making a false statement during a firearm purchase in violation of 18 U.S.C. § 922(a)(6). Doc. 1. On August 19, 2025, the defendant was arrested in the Northern District of New York on that complaint. Report at 1, Doc. 7. On September 2, 2025, the grand jury returned an indictment that charged seven counts, including conspiracy to traffic firearms, in violation of 18 U.S.C. §§ 933(a)(3) and 933(b). Doc. 5.

On December 19, 2025, the defendant pleaded guilty to that conspiracy count by plea agreement before United States Magistrate Judge Lindsay S. Griffin. Docs. 30, 35. On that same day, United States Magistrate Judge Griffin issued a report recommending accepting the guilty plea. Doc. 37. This Court accepted the plea on January 5, 2026, and scheduled sentencing for April 1, 2026. Doc. 40, at 1. This

Court further ordered the parties to file sentencing memoranda "no later than ten (10) business days prior to the date of the sentencing hearing." Doc. 40, at 2. This memorandum timely followed.

### III.    A LOW-END GUIDELINES SENTENCE COMPORTS WITH THE STATUTORY PURPOSES OF SENTENCING

There are no objections to the Report's calculations of the defendant's Guidelines. Accordingly, they provide for 70 to 87 months in custody and one to three years of supervised release. Report ¶¶ 89, 92. The United States thus respectfully submits that 70 months in prison, to be followed by three years of supervised release, is "sufficient, but not greater than necessary," to serve the purposes set forth in 18 U.S.C. § 3553(a).

*First*, the severity of the offense favors a significant prison sentence. Under § 3553(a), courts analyze "the nature and circumstances of the offense" to ensure that the sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." *See* 18 U.S.C. §§ 3553(a)(1) & (a)(2)(A). The Eleventh Circuit has recognized that making false statements to gun dealers is a serious offense, especially where a defendant makes them to help other criminals access guns. *United States v. Elsaddique*, 252 F. App'x 992, 993 (11th Cir. 2007) (explaining that, even without an identifiable victim, making a false statement to a gun dealer "alone created a significant danger to the public, which is only increased by the possibility that he made the purchase on someone else's behalf").

6

Here, the defendant profited from a scheme in which he falsely stated to gun dealers that he was buying guns for himself, only to smuggle the guns into Canada for his coconspirator to resell. Canadian investigators found ten of the guns that the defendant bought and sold to Person-1 at crime scenes in Ontario and Quebec. Report ¶¶ 22, 27 30-35. And, those investigators found two of the guns at the scene of homicides. Report ¶ 25, 27. They also found one while investigating a firearms discharge, Report ¶ 35, and another while investigating a robbery, Report ¶ 26. Those are serious, violent crimes, to which the defendant's gun trafficking conspiracy contributed. So, a sentence within the Guidelines would reflect the seriousness of the defendant's offense, justly punish it, and promote respect for the law.

*Second*, the defendant's background favors a low-end of the Guidelines sentence. Section 3553(a)(1) provides that courts shall consider a defendant's "history and characteristics" when imposing a sentence. 18 U.S.C. § 3553(a)(1). This defendant has a negligible criminal history: no criminal convictions and one misdemeanor arrest. Report ¶¶ 64, 65, 70. Though the defendant misled investigators when he spoke with them before his arrest, after his arrest the defendant timely pleaded guilty with a plea agreement. Report ¶¶ 36, 39, 48. He also has two young children. Report ¶ 73. Those factors mitigate his sentence. But, at the same time, the defendant used his commercial driver's license and trucking job to help transport firearms across the border. Report ¶¶ 83, 84. Taken together then, the defendant's background supports a sentence at the low end of the Guidelines.

*Third*, a low-end, Guidelines sentence will also deter others from taking part in firearms trafficking. A sentence should "afford adequate deterrence to criminal conduct." *Id.* § 3553(a)(2)(C). Put differently, "general deterrence is a critical factor that must be considered and should play a role in sentencing defendants." *United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022). Agreeing to traffic firearms across borders may seem enticing to enterprising truck drivers, especially those who routinely cross the border with legitimate freight. Such trucks have ample space to conceal contraband, like firearms, and drivers likely know that customs officers (on both sides of the border) cannot search every truck. The difficulty of detecting cross-border firearms trafficking thus weighs toward a significant sentence to make prospective traffickers think twice before bringing guns over the border to take advantage of high-resale prices on the illicit market.

*Fourth*, a low-end, Guidelines sentence serves the purpose of specific deterrence. In addition to fostering general deterrence, a court's sentence should "protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). 70 months, though the low-end of the Guidelines, amounts to a substantial prison term that will incapacitate the defendant from further firearms trafficking for a significant time. And, the defendant's status as a felon will prevent him from accessing this nation's lawful firearms market. *See* 18 U.S.C. § 922(g)(1) (prohibiting felons from possessing firearms). A low-end Guidelines sentence, coupled with a search condition during the defendant's supervised release, would thus protect the public.

8

*See* Report ¶ 105 (unobjected-to recommendation of a search condition during defendant's supervised release.

    ***Fifth***, and finally, a low-end Guidelines sentence avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). For example, another court in this District recently sentenced a defendant who straw-purchased twelve firearms, five of which Canadian law enforcement recovered at crime scenes, to a low-end Guidelines sentence of 46 months. *See United States v. Derick Desir*, Case No. 2:24-cr-4-KCD-NPM (M.D. Fla.), Doc. 63, at 5 (Notice of Maximum Penalty, attributing firearms to defendant in factual basis); Doc. 95, at 2-3 (Defendant's Sentencing Memorandum, noting Guidelines range of 46 to 57 months); Doc. 97 (minute entry reflecting Court adopted probation's calculation of the Guidelines and government recommendation of low-end Guidelines sentence). And, in *United States v. Jonen Castillo*, the court sentenced a defendant who shipped five handguns (all of which Canadian border authorities intercepted) to a 24-month sentence. Case No. 6:24-cr-42-JA-LHP (M.D. Fla.), Doc. 31, at 20-22 (Plea Agreement, attributing firearms to defendant); Doc. 51, at 2 (Judgment).

    In contrast, a court in the Western District of Texas sentenced a defendant who smuggled and trafficked between 70-140 guns into Canada to an 82-month prison sentence. *See United States v. Harsimran Dhaliwal*, Criminal No. 23-CR-125-RP (W.D. Tex.), Doc. 68, at 2 (Government's sentencing memorandum, attributing firearms to defendant); Doc. 72 (Judgment). And a Southern District of Ohio court

imposed 72-months in prison on a defendant who, as a part of an eleven-person conspiracy, trafficked more than 200 guns into Canada. *United States v. Abdulwahab Sharif Mohamed Hassan*, Case No. 2:20-cr-209-1 (S.D. Ohio), Doc. 35, at 1, 4 (Government sentencing memo, describing conspiracy); Doc. 40, at 2 (Judgment).

This defendant tried to smuggle significantly more firearms (48) than Desir (12) and Castillo (5), but less than Dhaliwal (70-140) and Hassan (more than 200). The low end of the Guidelines would avoid a sentencing disparity because it would ensure that this defendant received a materially greater sentence than Desir and Castillo and a meaningfully lesser sentence than Dhaliwal. Although the sentence would be only slightly less than Hassan's, this defendant played a more direct role in carrying out all facets of this two-person conspiracy (including buying and transporting each gun to Canada), while Hassan was one defendant who coordinated a larger conspiracy. Accordingly, a low-end Guidelines sentence for this defendant would avoid unwarranted sentencing disparities.

## V.    CONCLUSION

For all these reasons, the United States respectfully asks that the Court

sentence the defendant to a low-end, Guidelines term of imprisonment of 70 months

and three years of supervised release with a search condition.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:    */s/ Adam W. McCall*
Adam W. McCall
Assistant United States Attorney
United States Attorney No. 226
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Adam.McCall@usdoj.gov

11

**U.S. v. Erhan John Er**                    **Case No. 8:25-cr-424-MSS-LSG**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Nicholas G. Matassini, Esq.

<u>/s/ *Adam W. McCall*</u>
Adam W. McCall
Assistant United States Attorney
United States Attorney No. 226
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Adam.McCall@usdoj.gov

12